VIBRANT SALES, INC., Plaintiff,

v.

The NEW BODY BOUTIQUE, INC., Maximum Exposure Advertising, Inc., Harvey S. Fishman and Avram C. Freedberg, Defendants.

No. 80 Civ. 3019(MEL).

United States District Court,
S. D. New York.

Sept. 9, 1980.

Heller, Horowitz & Feit, P. C., New York City, for plaintiff; Jacob W. Heller, Richard F. Horowitz, New York City, of counsel.

Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for defendants; George B. Yankwitt, Floran L. Fink, Mark Jon Sugarman, New York City, of counsel.

LASKER, District Judge.

In February 1979, Vibrant Sales, Inc. ("Vibrant") began the manufacture and marketing of a "waist reducing belt" under the name [1] "Waist Away," which purported to trim the wearer's excessive girth without dieting or exercise. Vibrant marketed its belt through mail-order magazine advertising, using a photograph of a youthful man and woman together, both wearing Waist Away belts and bathing suits (hereinafter the original Vibrant photograph).

On September 4, 1979, Vibrant entered a joint venture agreement with Maximum Exposure Advertising ("MEA") to pursue a national marketing campaign. By March 13, 1980, the relationship between Vibrant and MEA had so deteriorated that Vibrant sent a letter to MEA terminating the joint venture. An agreement to that end was entered March 31, 1980. By its terms Vibrant bought MEA's interest in the joint venture for approximately $1,250,000.; [2] the termination agreement nevertheless authorized MEA to market a waist reducing belt not "identical in all respects to the Waist Away Belt currently being shipped by [Vibrant]" and to advertise its belts so long as it did not use the "likeness of the persons depicted" in the original Vibrant photograph.

Vibrant brought this action on May 28, 1980 against MEA, its principals Harvey S. Fishman and Avram C. Freedberg, and New Body Boutique, Inc. ("New Body"), the corporation created by them after the termination of the joint venture. Vibrant contends that defendants have violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and breached the termination agreement [3] by marketing a belt "identical" to the Waist Away belt, publishing advertisements of New Body's Shrink Wrap which include a picture of models whose likeness is the same as that of the models in the original Vibrant ad and who are wearing Vibrant's belt.

Defendants answer that their belt is not "identical" to Vibrant's because it is a different color and made of different material and that the models in their advertisement do not bear "the likeness of the persons depicted" in Vibrant's ad.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure trial of Vibrant's claims was consolidated with the hearing on its motion for a preliminary injunction.

I. The Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used,

1. Vibrant contends that it owns the Waist Away trademark; defendants argue that Vibrant knowingly falsely represented its ownership of "Waist Away" and that in fact the trademark belongs to Isaac Berger. Since ownership of a trademark is not necessary to succeed on either the contract or Lanham Act claims here, we make no finding as to Vibrant's proprietary interest in the trademark "Waist Away."

2. The purchase price is to be computed by means of a formula based on uncollected gross receipts and rental of customer lists, minus $20,000 and a specified amount per belt shipped by Vibrant to fill joint venture orders. Isaac Bikel's estimation of the purchase price at approximately $1,250,000 (Affidavit of Isaac Bikel, sworn to May 28, 1980) is uncontradicted.

3. Vibrant appears not to press its state law claim for trademark dilution alleged in the complaint.

shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Vibrant contends that defendants have violated this section by selling a belt confusingly similar to Waist Away, by using a photograph of a Waist Away belt in Shrink Wrap advertisements and by using advertisements which contain pictures so similar to those contained in Vibrant's ads as to result in the likelihood of confusion and actual confusion in the mind of the consumer as to the origin of defendants' belt.

The belt primarily being shipped by Vibrant is black on one side and blue on the other, has a Velcro fastening system which is sewn onto the belt in a three box configuration which is visible from the front, and is made of material known in the trade as "R-1400-N." The only differences between the Vibrant and Shrink Wrap belts is that the latter is made of material known as "G-231-N" which is thicker, and that it is entirely black.

■ The difference in the color of the belts is insufficient to distinguish Shrink Wrap from Waist Away or to eliminate the likelihood of confusion in the mind of the consumer. Since the belts are sold almost exclusively by mail orders originating from advertisements and since the advertisements published by the defendants show the belts only in black and white photographs, the difference in color between plaintiff's and defendants' belts is not perceptible to consumers. Furthermore, even if the advertisements demonstrated the difference in color between plaintiff's and defendants' belts, there is no proof, nor even a contention that the color has any functional significance.

The difference in materials is no more telling. While Daniel Herring, a sales representative for Rubatex Corporation which manufactures the material, testified that there are differences between the materials used by each party (including thickness, strength, stretch factor, return to original size, and cost (Tr. 620–46)) none of these factors was shown to have any impact on the effectiveness of the belts for their intended use or on its appearance to the consumer.

Moreover, Isaac Bikel, president of Vibrant, testified that in defendants' advertisements the shape of the stitching which holds the Velcro fastening system to the rubber belt was not a perfect square, that is, that the angles were not right angles. He further testified that the shape was peculiar to the products of the sewing machine he bought when Vibrant began its operations, describing the shape as a "fingerprint" which he could "recognize . . anywhere" (Tr. 227). We credit his testimony, and agree with his conclusion.

■ It is not surprising that since the belts differ only in color and material, they appear identical in black and white advertising—and indeed they do.[4] There can be no doubt, and we find, that defendants have used a photograph of plaintiff's belt in defendants' advertisement with the result that the advertisement had actually confused and is likely to continue to confuse the public as to the source of origin of defendants' belt.

Moreover, the identical appearance of the belts in defendants' and plaintiff's advertisements is not the only source of confusion. The appearance of the models in the defendants' ads is also of such striking similarity to that of the appearance in the plaintiff's ads as to create a likelihood of confusing the public as to the origin of the designation of the products respectively advertised.

Finally, that defendants' sale and advertisements of Shrink Wrap are likely to confuse the public is clinched by evidence of actual confusion (which is a commodity rarely to be found). Vibrant has introduced letters from customers which read as follows, for example:

4. Compare Exhibit D and Exhibit G attached to Affidavit of Isaac Bikel, sworn to May 28, 1980.

"Just a word to let you know that I have not yet received my Shrink Wrap . . I sent the check to Vibrant Sales . ."
(Plaintiff's Exhibit 31).

"I sent a money order for 1 shrink Wrap or Waist Away. . . . The money order was made out to Vibrant Sales."
(Plaintiff's Exhibit 30).

"You [addressed to New Body Boutique] used to go under the name of Vibrant Sales, under which alias you received and cashed a check from me as payment for a Shrink· Wrap which I still have not received."
(Plaintiff's Exhibit 25–B).

▇▇ Defendants argue that the thirty six letters introduced by Vibrant are de minimis in comparison to the volume of mail received by the parties. However, no proof of actual confusion is required to show a Lanham Act violation. It is rarely found and when such confusion is shown, it is overwhelming proof of the likelihood of confusion.[5]

▇▇ Next the defendants contend that because, according to them, ". . . the essential factor which triggers the applicability of Section 43(a) is that a defendant is 'palming off' its inferior and/or cheaper product" (Defendants' Post–Trial Memorandum of Law, p. 48), and because defendants' product is allegedly superior to plaintiff's, there can be no violation of the Act in the circumstances. But, putting aside the question of relative superiority between the two products, the argument misreads the Act. The Act proscribes false designation of origin, whether the product falsely designated is inferior or superior. While it is true that in perhaps a majority of Lanham Act cases the plaintiff happens to be the manufacturer of a superior product attempting to protect his product's reputation by enjoining the manufacturer of a confusingly similar inferior product, it remains true that the Act proscribes all ads tending falsely to describe the designation of origin.

▇▇ Finally the defendants assert that any similarity in advertising is an inevitable result of the nature of the product advertised. However, although they correctly maintain that Vibrant does not have an exclusive right to use a man and woman in bathing suits as models, there is nonetheless plenty of room for variance from Vibrant's advertisement within that framework to ensure that defendants' ads do not tend to confuse the public as to whose product is being sold. In any event, if it is not possible to advertise Shrink Wrap in a manner not confusingly similar to Vibrant's ads, then New Body may not advertise at all, since by so doing they violate the Lanham Act's mandate that the origin of a product may not be falsely designated.

Accordingly, we conclude that defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by advertising Shrink Wrap in a manner which falsely designates its origin.

## II. Breach of Contract

### A. An Identical Belt

Paragraph 7(d) of the termination agreement provides:

"7. Neither the Purchaser nor Sellers nor MEA shall run competitive ads under the names of Waist–Away or any other name in the publications and issues thereof which are set forth in schedule A annexed hereto. No ads shall be placed by Purchaser in said issues and scheduled to run until the present Waist Away ads have appeared on a publication by publi-

---

5. Defendants argue that any confusion has been created by Vibrant's advertising a black belt and shipping a blue and black belt. How-. ever, since the color of the belt does not appear in the primarily black and white advertisements this would not tend to confuse the public. Furthermore, since the same practice was followed by defendants as partners to the joint venture they may be estopped from raising this claim now.

Defendants contend that since the source is clearly noted on their advertisements, they cannot be said to have created a likelihood of confusion. We disagree that this fact ends the inquiry into the similarities between the parties' advertisements. Rather, it is one factor to be assessed with the others noted.

cation basis. Subject to said restriction, the Sellers, MEA and any corporation or other entity organized by Sellers, shall be free without restriction or claim by the Purchaser, to sell, advertise, market, manufacture, distribute or promote, by mail order or otherwise, any product, including, but not limited to a reducing belt or other similar or related products, except that:

·   ·   ·   ·   ·

(d) *A belt identical in all respects* to the Waist–Away Belt currently being shipped by Purchaser shall not be marketed or manufactured by Sellers or MEA. For this purpose the parties hereto agree that belts differing in any respect whatever, including, but not limited to different fastening system, a different texture, dimensions, or otherwise differing in any respect whatever, shall not be deemed to be an identical product." (emphasis supplied)

The belt primarily being shipped by Vibrant at the time of the signing of the termination agreement was the blue and black belt described above.[6] The question is whether the difference in material and color renders the Shrink Wrap not "identical" to the Waist Away within the meaning of the termination agreement, which in turn depends on the interpretation of that term in the contract.

Vibrant contends that the contract should be construed to authorize defendants to market a belt *only* when it is materially different from its Waist Away, and that the Shrink Wrap belt is not materially different from the Waist Away belt. Defendants argue that during the course of the negotiations plaintiff's counsel demanded that the

word "identical" be modified by the adverbs "materially" or "reasonably" and that the demand was rejected. (Tr. 513–15) From this history they conclude that the contract language must therefore be construed literally and that the differences between Vibrant's and defendant's belts are sufficient to render them non–"identical" within the meaning of the contract.

■ To adopt defendants' interpretation of the contract that a manufacturer is free to sell to the public a product so long as it is not "identical in all respects" to the product of his competitor is unacceptable for two reasons: First, such an interpretation would for all practical purposes repeal *pro tanto* the public's right under the Lanham Act to be protected against false designation of origin. It is plain that if the defendant were allowed to manufacture a product which competed with plaintiff's but which deviated from it only in some infinitesimal way (a proposition which the defendants contend they are entitled to do under the contract) the public would probably be confused, and indeed that is precisely what has happened in this case. Second, the proposed interpretation violates principles of contract construction. The contract clearly purports to confer a right of protection on Vibrant. Yet as defendants construe the contract, Vibrant's right to protection would be hollow and meaningless. For example, defendants' counsel testified that under defendants' construction of the contract, if the only difference between plaintiff's and defendants' belts was that the fastener on one had 1000 Velcro "hooks" while the other had 990, the defendants' belt would not necessarily be "identical" within the meaning of the con-

---

**6.** There is substantial dispute over whether "the belt currently being shipped by [Vibrant]" was black on both sides or black on one side and blue on the other. Vibrant's employee, Galpert, testified that most of the belts Vibrant was then shipping were blue and black and infrequently a completely black belt was sent. Defendants argue, based on Vibrant's rubber invoices and incomplete sales records, that Vibrant had no black rubber left by March 31, 1980 so that the "belt currently being shipped" and referred to in the contract was the blue and

black belt. Since the figures on which defendants rely are inconclusive on this point and since Galpert's testimony is otherwise uncontradicted we find that Vibrant was shipping primarily the blue and black belt and occasionally the completely black belt. However, our conclusion that defendants breached the contract does not rest on this finding because we find in the text above that the differences between plaintiff's and defendants' belts are not material.

tract. It would follow that defendants would be free to manufacture a belt, which, without the aid of a microscope no normal person could distinguish from plaintiff's product.

Such a reading simply would not be " 'a fair and reasonable interpretation' ", *Pittsburgh Coke & Chemical Company v. Bollo*, 421 F.Supp. 908, 928 (E.D.N.Y.1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977) (quoting *Aron v. Gillman*, 309 N.Y. 157, 163, 128 N.E.2d 284 (1955)); *Hutchins v. Bethel Methodist Home*, 370 F.Supp. 954, 962 (S.D.N.Y.1974), particularly since the contract was drafted by defendants' counsel, and must accordingly be construed against the defendants where, as here, it is ambiguous. *Stern v. Satra Corporation*, 539 F.2d 1305, 1310 (2d Cir. 1976).

In sum, defendants' proposed literalistic construction of the provisions of Paragraph 7(d) of the termination agreement is rejected. We construe that paragraph to limit defendants' authorization to market belts in competition with the plaintiff only when defendants' belt is materially different from the belt which the plaintiff manufactured at the time of the agreement. Since we have found above that there is no material difference between the two belts as advertised, we conclude that the defendants have breached Paragraph 7(d) of the termination agreement by advertising and marketing the Shrink Wrap belt.

**B.  Likeness of the Persons**

Paragraph 7(c) of the termination agreement prohibits defendants from using "the likeness of the persons depicted in the advertisement" which contained the original Vibrant photograph. Vibrant contends that defendants' advertising contains photographs which violate this provision. Defendants answer that since the models in their advertisement are not the same persons as those shown in Vibrant's, the contract has not been breached.

While defendants' argument has some appeal it does not prevail. It will be recalled that the contract was drafted by defendants' counsel. If the contract were intended to provide that the defendants were free to use any models other than the very persons appearing in the original Vibrant ad, one would have expected the contract to read accordingly. It does not. The language used bars the defendants from using the "likeness of the persons depicted in the advertisement" and the preferred definition of the word "likeness" in Webster's Third New International Dictionary is "the quality or state of being like; resemblance; similarity." If this definition of the word "likeness" is applied–and there is no reason why it should not be–the contract phrase prohibits defendants from using the photographs of any persons who substantially resemble the models appearing in the Vibrant photograph.

There are other reasons why defendants' proposed interpretation of Paragraph 7(c) is unpersuasive. First, it would provide no practical protection to the plaintiff. Second, and more important, it would permit the publication by the defendants of advertisements which would tend to confuse the public as to the source of origin of the defendants' products and would thus controvert the proscription of the Lanham Act. Accordingly, we construe the language of Paragraph 7(c) to prohibit the defendants from using in its advertisements models who substantially resemble the models shown in the Vibrant photograph.

An examination of the photograph of the couple depicted in the Shrink Wrap advertisement establishes that they strikingly resemble the couple shown in the Vibrant photograph. For the reasons stated above, we therefore conclude that defendants have breached Paragraph 7(c) of the termination agreement.[7]

---

7.  Defendants claim that Vibrant breached the termination agreement by bringing this lawsuit. Apparently, defendants rely for this proposition on the following language from the contract: "Subject to said restriction, the Sellers, MEA and any corporation or other entity organized by Sellers, shall be free, without restriction or claim by the Purchaser, to sell, advertise, market, manufacture, distribute or promote, by mail order or otherwise, any product, including but not limited to, a reducing belt or

Vibrant contends that defendants' actions found here to violate the Lanham Act and the termination agreement, supplemented by other alleged conduct such as withholding Vibrant's mail, evinces defendants' acting in bad faith and engaging in unfair competition "bordering on the ruthless and vicious." However, it appears that defendants relying on the advice of their counsel, reasonably believed that the provisions of the termination agreement permitted them to act as they did. Accordingly, we find that defendants did not act in bad faith in pursuing their course of conduct.

In sum, we conclude that defendants have violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and breached the termination agreement of March 31, 1980 by marketing Shrink Wrap and by advertising it in a manner which tends falsely to designate its origin. The plaintiff is entitled to a permanent injunction barring such actions by the defendants.

Submit decree on notice.

other similar or related products, except that:"

Following this language is a list of restrictions on defendants' sphere of competition, including those alleged to have been breached here. Since Vibrant is suing on those alleged breaches, the quoted language does not prevent Vibrant from bringing this suit, and defendants' position is without merit.

Vibrant argues that the termination agreement is unenforceable because defendants coerced Vibrant into entering it by refusing to turn over Vibrant's mail (which is crucial to the continued survival of a mail order business) unless the agreement was signed. Defendants respond that the mail was withheld because Vibrant had stopped payment on certain checks. There is evidence to support both positions. Because Vibrant prevails here on its claim for breach of the termination agreement, we need not and do not decide the question.